Report oe Committee.

February lOi% 1814.

Mr. Van Rensselaer, from the committee of privileges and elections, to whom was referred the petition of John White, and the documents accompanying the same, praying that he may be permitted to take his seat as a member of this House, reported:
That it appears by the affidavits of John McDonald, one of the inspectors of the election of the town of Athol, in the county of Warren, Benoni Aldrich, Stephen Moon, James Dow and Stoakes Potter, that Duncan Cameron, John McDonald, John Cameron, Holden Ilenyon and William Johnson wore the inspectors of the last anniversary election in the said town ; that the latter attended only the first day; that the said Duncan Cameron, John McDonald and John Cameron did not vote at 'the said election, because, as they believe, they were severally aliens, and that "the said board did decide that working on the highway alone was a sufficient qualification to entitle a man to vote, and that they did receive votes according to that decision. It further appears by the affidavit of the said John McDonald, that he was an alien, and that Duncan Cameron declared *32 in bis bearing, “ tbat be could not take tbe oath if challenged.” By tlie affidavits of John Murray and James Cameron, it appears tbat tbe four first named inspectors acted as such on tbe last day of election, and tbat Duncan Cameron, John McDonald and John Cameron did not vote at that election, believing themselves aliens,. as they severally declared in tbe hearing of the deponents tbat they were born in Europe, and James Cameron knows tbat John Cameron was born in Europe.
By tbe affidavit of Benoni Aldrich, it further appears that tbe said inspectors refused to administer tbe oaths, prescribed by law, to one William. Scripture, who was challenged by a person duly qualified to vote at tbe said election, declaring tbat they bad decided that working on tbe highway alone constituted a qualification to vote, and that if there was ever so much challenging, if they knew of any body being taxed or working on the highway, he should vote without being sworn, declaring tbat the board would be their own judges. It .is proved, by the certificates of John Beebe, cleric of the county of Warren, tbat the said Duncan Cameron and John McDonald were naturalized at a court of common pleas, held in and for the said county, on September 14th last. It also appeared on the examination of John. McDonald, who was one of the inspectors of the town of Athol, that he was born in Scotland, came to this country about the year 1714 or 1775, with the family of his father, being then an infant, and settled in the county of Delaware; that his father shortly after (about the commencement of the revolutionary war), left his family and went to Canada, where he remained the greater part of the war.
The board of inspectors decided that a mere residence for six months within the town, and working on highways within the county, were sufficient qualifications to entitle persons to vote, and that one or more persons were on such qualification allowed to vote. It further appeared by the examination of Duncan Cameron, also one of the inspectors of the town of Athol, that he emigrated to this State from the place of his nativity, North Britain, in the year 1785, and was naturalized in September last; was about ten years old at the time of his arrival here; does not know that his father was ever naturalized ; confirms the testimony of John W. McDonald, and adds, that no .person who had been challenged was permitted to vote by them, without being sworn, or the challenge, withdrawn. It further appeared from the examination of John McDonald, one of the inspectors of the town of Athol, that he was born in Scotland; that he emigrated to *33 this country in 1785, and was naturalized in the month of January last past; he confirms the statement of the two last preceding witnesses, as to the decision of the board in regard to the qualification of voters.
It is proved to your committee, by Archibald Noble, of Johns-burgh, in the said county -of Warren, that John Richards, Henry Allen, Wm. Leach, Norris Hopkins and himself, were the inspectors of the election in the said town in April last, and that he himself was an alien, having been born in Ireland, and from his’ testimony and the certificate of the aforesaid John Beebe, it is further proved that he has since been naturalized, and from the testimony of Morris Hopkins, one of the said inspectors of the said election, it-appears that he was not a freeholder, as the only real estate he possessed or held, either in his own or his wife’s right, was under a lease' of twenty-one years, with a covenant that if the consideration money was paid within that period, he should be entitled to a conveyance in fee, and by the affidavit of Henry Allen* another of the said inspectors, it appears that he owns a freehold in the town of Bethlehem, in the county of Albany, and possesses a farm in Johnsburgh, under a lease granted by John Thurman, for twenty years, with liberty to purchase the fee within that time.
It was further proved, on the examination of John Morse, one of the inspectors of the town of Kingsbury, that shortly after the last annual meeting the inspectors of that town met and agreed that the poll should be held on the first day of the then ensuing anniversary election for members of Assembly, and the other officers then to be elected, at .the dwelling-house of the widow Clark, on the second day thereof at William Colvin’s, and on the third or last day at Alpheus Doty’s, and they then authorized Nathaniel Pitcher, also one of the inspectors, to put up the notices pursuant to such determination, which was accordingly done, as he afterwards saw one of them ; that the election was not held on the said first day at the dwelling-house of the said widow Clark, but was opened 'at the house of John Stewart, at a distance of between a half and three-quarters of a mile from her residence, that he never knew of any second or other meeting of the said inspectors for the purpose of altering the notice first published, nor did he, to the best of his knowledge, consent to the alteration of the place, nor know that it was to happen till on the first day of the election; that he lives near the said Pitcher, in the village of Sandy Hill. This witness added that, in his opinion, the *34 place of bolding the election on the first day produced no difference in the result of the election of that town, and said that the change of place was owing to sickness in Mrs. Clark’s family.
It appears, from the affidavits of several persons, that the said election was advertised by the inspectors thereof to be held on the first day at the widow Clark’s, but'that it was not there held, but at the house of John Stewart; and William Colvin, one of the inspectors, swears that the reason of not opening the poll at the house of widow Clark was the sickness of some of the family, and the notices first up were not altered, nor were any new notices put up altering the place of holding the election on the first day, nor were the old ones altered, according to the knowledge or belief of the deponent, and that the notice put up at the house of William Colvin, one of the inspectors, was not altered. Arad. Sprague swears that the facts stated by William Colvin are true to his belief.
By the affidavit of Nathaniel Pitphcr it appears that the notices were prepared and put up as sworn to by the other witnesses, that the poll was not held at Mrs. Clark’s f>ut at John Stewart’s on the first day; it further appears, by the same affidavit, that at least two weeks before election he informed a majority of the inspectors of the sickness of Mrs. Clark’s family, and that she could not permit the election to be held at her house, and that the majority did consent and agree that the election should be held at her house, and that the majority did consent and agree that the election should be held at Mr. Stewart’s, being within sight and within a few rods distant from Mrs. Clark’s, that he drew the advertisements accordingly, and posted u p three of them himself at public places in Kingsbury, and that he was informed and verily believes that at least three others were posted at other public places in the town, that he has heard of only one person being disappointed in the place of holding the election, and that was William Colvin, one of the inspectors; that, in his opinion, the electors were fully apprized of the place of holding the first day as at any former election ; that he has no doubt that the place where the election was held was advertised in at least five public places in the town, and at least eight days before the election. James Nichols, as one of the inspectors, confirms the affidavit of Nathaniel Pitcher, and Felix Alden, another of the inspectors of the town of Kingsbury, testifies that after the advertisements were put up directing the election to be held at Mrs. Clark’s, Nathaniel Pitcher informed him of the sickness of her family, and requested his permission to change *35 h to Ool. Stewart’s, tliat lie assented to tlie alteration, and lias under, stood and believes tliat tlie election was notified accordingly more than eight days before the election, that the distance between Mrs. Clark’s and Col. Stewart’s, is about half a mile, and that he did not hear of any objection at the election to the place of holding the same.
It appears from the affidavit of George Marshall, made on the seventh day of February instant, that some time in the course of the last week, he was present at a conversation between Nathaniel Pitcher, with some other gentlemen, on the subject of the last anniversary election, and that the conclusion which he drew from the conversation of the said Pitcher was, that tlie alterations in the notices of the said election were made only two or three days before tlie said election.
It further appears by the affidavit of Abraham L. Yandenburgh, that at the said election a notice was put up at Stephen Aslilev’s tavern, stating that the election on the first day would be held at Mrs. Clark’s; that three.or four days before the election, he observed a notice attached to the original notice, stating that the election on that day would be held at the dwelling-house of John Stewart, on the first day thereof; that he boarded with Ashley at the time, and would have observed the alteration before the time if it had been made, and he further says that it is his impression, and he verily believes that the alteration was not made as the law directs.
From these statements, it appears that if this House shall vacate the election in either of the towns in which irregularities are complained of, the seat of John Pichards must be vacated, and the petitioner, John White, admitted.
Your committee cannot omit, on this occasion, expressing their conviction, that on the purity of our elections depends the preservation of our esseutial rights and privileges. That a rigid compliance with all the requisites of the election law is necessary to preserve that purity; that a participation in the elective franchise, by aliens, and more particularly by alien enemies, would establish a principle which, iu it's operation, might be highly dangerous to the vital existence of that franchise; that a participation in the offices of government, by such aliens, is opposed to the principle and practice of every free and independent government.
Your committee consider the testimony as affording conclusive evidence of the fact of alienism of two, if not three, of the inspectors of election in the town of Athol. They are unanimously of opinion *36 that the election in the said town was therefore an absolute nullity; that of course the seat of John Richards, Esq., should be vacated, and the petitioner be admitted as a member of this House.
Ordered, That the said report be committed to a committee of the whole House.
Assembly Journal, 1814, pages 90, 91, 92, 93.
For further proceedings, see Assembly Journal, 1814, pages 123 and 148.
Seat awarded to JonN "White.
February VUh,. 1814.
The House resolved itself into a committee of the whole, on the report of the committee of privileges and elections, on the petition of John White, claiming his seat as a member of this House, duly elected in the counties of Washington and Warren, and after some time spent thereon, Mr. Speaker resumed the chair, and Mr. E. W. King, from the said committee, reported, that in proceeding on the said report, and after the same had been read in the committee, Mr. E. Williams made a motion that the committee should agree to a resolution, which was read, and is in the words following, viz.:
Resolved, As the sense of this committee, that John White ought to be permitted to take his seat as a member of the House of Assembly, duly elected in the counties of Washington and Warren, in the room of John Richards, the sitting member, and the seat of the said John Richards ought to be accordingly vacated.
The Speaker put the question, and it was carried in the affirmative; thereupon,
Resolved, That John White be permitted to take his seat as a member of this House, duly elected in the counties of Washington and Warren, in the room of John Richards, the sitting member, whose seat is hereby declared vacant.
Assembly Journal, 1814, pages 150, 151.